IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: ) | |
| ) | C/A No. 2:09-0251-MBS |
| Marine Energy Systems Corporation, ) | |
| ) | **OPINION AND ORDER** |
| Debtor. ) | |
| _____) | |
| ) | |
| W. Ryan Hovis, Trustee, ) | |
| ) | Case No. 97-1929-JW |
| Plaintiff, ) | Chapter 7 |
| ) | Adversary No. 08-80017-JW |
| vs. ) | |
| ) | |
| William J. Gilliam, Internal Revenue ) | |
| Service, South Carolina Department of ) | |
| Revenue, and Gilliam Exempt Family ) | |
| Trust, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

Defendant William J. Gilliam, individually, filed for protection under Chapter 11 of the Bankruptcy Code on July 8, 1996. In November 1997 Debtor attempted to carry back certain net operating losses (NOLs) on an amended 1996 personal tax return in order to eliminate his 1993 tax liability. The amended tax return was disallowed by the Internal Revenue Service (IRS), as was a second amended return. The case was converted to a Chapter 7 liquidation on January 28, 1998. Upon conversion to Chapter 7, the Trustee declined to carry back the NOLs, determining instead that the losses constituted a short term capital loss (nonbusiness bad debt) that should be carried forward to subsequent years. The IRS and South Carolina Department of Revenue (SCDOR) have filed proofs of claim against Gilliam that have not been challenged by the Chapter 7 Trustee.

Gilliam was president and eighty-percent shareholder of Debtor Marine Energy Systems

Corporation (MESC). MESC filed for protection under Chapter 11 of the Bankruptcy Code on March 4, 1997. The MESC action was converted to Chapter 7 on December 1, 1998. On March 15, 2004, the bankruptcy judge approved a settlement of MESC's claims against an attorney and his law firm for the sum of $2.5 million. The bankruptcy judge determined that the Chapter 7 trustee would retain $100,000 of the settlement proceeds for the benefit of MESC's estate, if MESC was able to revive and fund a Chapter 11 plan. If the Chapter 11 plan was not funded, the Chapter 7 trustee was to disburse the $100,000 to Gilliam. Ultimately, the Chapter 11 plan was not funded. The IRS and SCDOR served the Chapter 7 trustee with levies against the $100,000 for the tax debt they contend is owed by Gilliam. On or about February 11, 2008, the Chapter 7 trustee filed an adversary proceeding in bankruptcy court to determine the relative priority of the claims to funds held by the trustee for the benefit of Gilliam.

Gilliam also is the trustee for the Gilliam Exempt Family Trust (GEFT). GEFT purportedly made certain secured loans to Gilliam. Gilliam asserts that GEFT holds a priority position as to the $100,000 settlement proceeds over the tax liens asserted by the IRS and SCDOR. Upon Gilliam's motion, the bankruptcy judge joined GEFT as a party by order filed June 20, 2008.

The IRS filed a motion for summary judgment in bankruptcy court on January 5, 2009. On January 6, 2009, Gilliam filed a motion for withdrawal of the reference of the adversary proceeding to the bankruptcy court. The IRS filed a memorandum in opposition on or about January 22, 2009. The motion, response, and record were electronically transmitted to the court on January 30, 2009. Gilliam filed a reply memorandum on February 9, 2009.

DISCUSSION

Gilliam moves the court to withdraw the reference of the adversary proceeding pursuant to

28 U.S.C. § 157(d), which provides:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

Thus, § 157(d) contains both a permissive and mandatory component. The burden of demonstrating permissive or mandatory withdrawal is on the movant. Vieira v. AGM, II, LLC, 366 B.R. 532, 535 (D.S.C. 2007)(citing In re U.S. Airways Group, Inc., 296 B.R. 673, 677 (E.D. Va. 2003)).

A. Timeliness

Courts have defined "timely" to mean as soon as possible after the moving party has notice of the grounds for withdrawing the reference. See id. at 536 n.5 (citing In re Manhattan Investment Fund Ltd., 343 B.R. 63, 68 (S.D.N.Y. 2006)). In this case, the question of the priority of the various liens to the funds held by the Chapter 7 trustee for the benefit of Gilliam has been in dispute at least since February 11, 2008. Nevertheless, Gilliam waited for nearly a year to move to withdraw the reference, despite arguing as early as March 2008 that GEFT has a senior secured lien to the funds held by the Chapter 7 trustee, and that the IRS and SCDOR have no valid tax claims against him individually. See Entry 1-3, 20. The court concludes that Gilliam's motion is untimely.

Even if Gilliam's motion were not untimely, the court concludes that Gilliam has not satisfied the requirements for mandatory or permissive withdrawal under § 157(d).

B. Mandatory Withdrawal

Courts have narrowly construed the mandatory withdrawal provision of § 157(d) to apply

only in cases "'where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding.'" In re Manhattan Investment Fund, 343 B.R. at 66 (quoting In re Ionosphere Clubs, Inc., 922 F.2d 984, 995 (2d Cir. 1990)). To do otherwise could create "'a broad escape hatch through which most bankruptcy matters [could] be removed to a district court.'" Id. (quoting In re Combustion Equip. Assocs., 67 B.R. 709, 711 (S.D.N.Y. 1986)). District courts in this Circuit have determined that mandatory withdrawal is appropriate when (1) the party seeking mandatory withdrawal files a timely motion, (2) the bankruptcy court is called upon to apply non-bankruptcy federal law, and (3) the application of non-bankruptcy federal law is essential to the bankruptcy proceeding. Id. (citing U.S. Airways, 296 B.R. at 536). Mandatory withdrawal is not warranted unless the bankruptcy court must decide a question under non-bankruptcy federal law in order to resolve the proceeding. Id. (quoting U.S. Airways, 296 B.R. at 679-80).

The court already has determined that Gilliam's motion is untimely. As to the remaining factors, Gilliam contends that the bankruptcy judge will be called upon to determine the validity of the IRS's tax lien as well as the validity of GEFT's lien. The court disagrees. Although Gilliam has challenged the IRS tax lien in numerous forums, the bankruptcy judge has made a determination to abstain from hearing Gilliam's claims regarding his individual tax liability. The issue before the bankruptcy judge in this case, therefore, concerns the relative priority of the various liens against the funds held by the Chapter 7 trustee for the benefit of Gilliam. The bankruptcy judge will be required to apply the relevant lien and levy provisions of the Internal Revenue Code. Gilliam has failed to establish that the bankruptcy judge must decide a question of non-bankruptcy law in order to resolve the adversary proceeding.

C.  Permissive Withdrawal

In considering whether to grant permissive withdrawal of a reference, courts have considered the following factors: (1) whether the proceeding is core or non-core; (2) the uniform administration of bankruptcy proceedings; (3) expediting the bankruptcy process and promoting judicial economy; (4) the efficient use of debtors' and creditors' resources; (5) the reduction of forum shopping; and (6) the preservation of the right to a jury trial. Vieira, 366 B.R. at 538 (quoting U.S. Airways, 296 B.R. at 681).

Gilliam concedes that the underlying adversary proceeding is a core proceeding. The fact that the proceeding at issue is a core proceeding weighs against withdrawal of the reference. See In re Orion Pictures Corp., 4 F.3d 1095, 1102 (2d Cir. 1993) (noting that "hearing core matters in a district court could be an inefficient allocation of judicial resources given that the bankruptcy court generally will be more familiar with the facts and issues"). With respect to the uniform administration of bankruptcy proceedings, the court notes that the protracted bankruptcy proceedings involving numerous related parties compel a conclusion that withdraw is inappropriate. The bankruptcy judge is familiar with the different individuals and entities and more able to ensure that his rulings are consistent throughout the various cases. This factor weighs against withdrawal of the reference.

With respect to judicial economy, Gilliam contends that the court is better suited to handle the adversary proceeding and "avoid one layer of appeals." Entry 5, 3. The court is not persuaded. "[I]f accepted, [such an argument] would lead to the nonsensical conclusion that all references should be withdrawn since all dispositive matters resolved by the bankruptcy court may be appealed to the district court." U.S. Airways, 296 B.R. at 682 n.22. The bankruptcy court has expended time

5

and resources on the within litigation, and the adversary proceeding should be allowed to run its course. The same rationale supports a conclusion that debtors' and creditors' resources are more efficiently utilized if the case remains with the bankruptcy judge. The right to a jury trial is not implicated in the underlying adversary proceeding, and the court will assume for purposes of the motion to withdraw reference that Gilliam does not undertake forum shopping.

In the court's view, no factor militates in favor of withdrawing the reference in this action. Moreover, as initially stated, the motion is not timely. See Vieira, 366 B.R. at 537 n.9 (noting that a motion requesting permissive withdrawal "must, like a motion requesting mandatory withdrawal, be timely filed") (citing United States v. Kaplan, 146 B.R. 500, 503 (D. Mass 1992)).

## CONCLUSION

For all these reasons, Gilliam's motion for withdrawal of reference (Entry 1) is **denied**.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
United States District Judge

Columbia, South Carolina

February 24, 2010.